May it please the court, my name is David Mercer. I represent the appellant Jose Malagon-Soto in this appeal. This appeal presents a single issue for review, and that is whether a conviction under Kentucky law for second degree manslaughter is a crime of violence as that phrase is used and applied in United States Sentencing Guideline 2L1.2B1A. As this is a purely legal question, I would anticipate the court will engage in de novo review. The facts of this case are fairly straightforward. Mr. Malagon-Soto pled guilty to a violation of 8 U.S.C. 1326A, that is he illegally re-entered the United States having previously been deported. At his sentencing in district court for that violation, it came to light that he had a prior conviction under Kentucky law for second degree manslaughter. This Kentucky conviction resulted in his guilty plea to wantonly driving a motor vehicle while intoxicated. And thereby causing the death of another person. At the sentencing hearing in this case, and over my objection, the district court used this Kentucky conviction to impose the 16 level enhancement to Mr. Malagon-Soto's total offense level pursuant to guideline section 2L1.2. Ultimately, the district court imposed a 36 month sentence. Without the 16 level increase, his guideline range would have been 15 to 21 months. Earlier this week, the government supplied a 28J letter which contained Roblero-Ramirez case which was decided by this court previously. Having read that case now a number of times, I'm convinced that the Roblero-Ramirez case does not answer the question before the court. It asks the question that's before the court. And specifically, in Roblero, the court was faced with a statute that provided for intentional manslaughter and unintentional manslaughter. And in Roblero, the court was asked the question of whether the intentional prong of that manslaughter statute was a crime of violence to be used under the illegal immigration guidelines. However, the court went on to say and to clarify that it was not considering the mens rea, or it has not considered the mens rea element for generic federal manslaughter. And it also clarified, quote, we need not decide at this time whether generic manslaughter requires purposeful or intentional behavior, close quote. That is the question of Mr. Malagon Soto's case. Is that the question you presented to the district court at sentencing? I believe it is, absolutely. Did you ask the district court to determine what the generic manslaughter was? Or was your argument more that it's just simply not a crime of violence? Because I'm concerned that the district court didn't have this particular aspect of your argument that you're making today in front of it. I don't know that the phrase generic definition of manslaughter was used at the sentencing here. In fact, I'd be surprised if it was. Isn't that, well, because the guidelines for right or for wrong have said manslaughter counts as a crime of violence under 2L1.2, right? I mean, whether that's consistent with any other portion of the statute, section 16 or ACC, anywhere else. So really, aren't we boiling it down to, is this generic manslaughter? I think that would certainly be one way of formulating the question. I don't think that that, however, captures the essence of what was argued at sentencing. At sentencing, obviously, we're starting with a group of listed offenses under the application notes to 2L1.2, which include manslaughter. And so, I was arguing to the court that, obviously, manslaughter does not mean manslaughter in all cases. Otherwise, I would not have made an argument to the court. And in essence, what I was arguing is, obviously, we're stuck with the language of the guidelines, which has the word manslaughter in it. But there has to be more meaning to that term in order for you to impose this enhancement. And in fact, the tenor of argument at sentencing for both the government and the defense was, what does manslaughter mean in the context of this guideline? Now, do I wish I had uttered the phrase generic manslaughter? I think it perhaps provided more clarity to my argument. But my argument essentially was, just because the word manslaughter is used does not mean it qualifies as manslaughter, as should be contemplated by the federal court system. And in fact, that's what brought the majority of the argument to the head of the sentencing hearing was, what does manslaughter mean? Does it mean unintentional actions, or does it reserve exclusively for intentional actions? And if you read Judge Phillips's comments in the transcript, it is clear that what she was wrestling with, what all of us were wrestling with, is something much more complicated and subtle than whether this is an enlisted offense or not. It is, but the question is, is it a qualifying offense? And that certainly, whether we use the phrase generic manslaughter or not, that was absolutely what was at issue before the court in the sentencing hearing. You know, this whole area is, in my opinion, pretty murky because of what the Supreme Court's done at these things. But as Judge Benton said earlier about our law clerks scouring the law out there. I've got a case for you that this is why you stay up late at night. Are you ready? Go for it. The Sixth Circuit has decided this, and of course, Kentucky's in the Sixth Circuit. In an opinion written by Martin Boyce, not a hardline sentencing person. Has specifically held that the Kentucky manslaughter statute, the same one we have here, in Session Armed Career Criminal. And it quotes it and said that it is, that it applies and is properly counted in this case as United States versus Briggs. Briggs manslaughter conviction is a violent felony. It's specifically on point. Actually, your honor, if I could be so bold, it's not. Okay, why not? You were up late last night reading- You found it? I was up late reading Torres via Lobos again. Okay. The case that you're referring to is regarding the Armed Career Criminal Act. That's a completely and fundamentally different definition of crime of violence. And in fact, if you look at the footnotes in Torres via Senor, it specifically says that this is not the same crime of violence that's used for 924E cases or career offender cases that's defined in chapter four of the guidelines. This is a completely different animal. And so if I might be so bold, I would say that that case really doesn't apply here, because we're dealing with a completely different formulation of the concept of crime of violence. Okay, but the difference that the Sixth Circuit is drawing is really over the word wantonly. That that creates, and of course we have here the Kentucky Supreme Court definition of that. And your honor, the reason that they're different cases is because the chapter four definition of crime of violence and the career offender has what is truly the residual clause. And that is it involves conduct that carries with it a high risk of someone becoming physically injured. That true residual cause that exists in 924E and chapter four of the guidelines does not exist in 2L1.2. In fact, there is no such residual clause like that in 2L1.2. It specifically exempts that kind of conduct. The reason that this area of law is so confusing, it's like a big bowl of spaghetti. We all have a big bowl of things that look alike, that seem to wrap around each other and touch one another, and yet they have their own identity. Crime of violence for chapter four does not equate to crime of violence as that term is used in 2L1.2. And to further complicate it, it does not equate to what is used in 18 USC section 16 where crime of violence is defined yet again. And so there's so many conflicting definitions of the same term. What I would ask the court to do, look very carefully at the footnotes in Torres Villalobos. Well, which one particularly? I haven't- You know, your honor, I'm sorry, I didn't write that one down. Help me with what you're talking about. I can find it while I'm waiting to- No, I know, but- There's a footnote where it says basically that crime of violence as it's defined for is that career offender guidelines and chapter four are not an issue in this case. I'd like to save a little bit of time for rebuttal, but if I say 40 seconds, thank you. Okay, we'll give you a minute. Hey, Mr. Milligan, good morning. Good morning, your honors. Good morning, counsel. May it please the court. My name is Gary Milligan. I represent the United States in this case. I believe that the defense is correct in terms of the way the issue should be framed. Obviously, it would have been better for all parties to have found the Roblero case earlier in this. I think it would have perhaps provided a better record for the court. Are you familiar with the Sixth Circuit Briggs case? No, unfortunately, I was just trying to look through my stuff to find out as well. And I think Mr. Mercer makes a good argument that we're talking about two different definitions here. I know we have a lot of law that says that they're almost the same or are the same and blah, blah, blah, but they're not exactly the same. No, and the government would agree with the general proposition that one crime of violence cannot necessarily be equated to another. Certainly, the way that one of our own arguments in this brief is that Title 18, Section 16, crime of violence is not necessarily the same as the guideline 2L, crime of violence. So obviously, we made that same argument. However, I think one thing, there's one thread that runs continuously through the way that the courts have looked at crime of violence in all these contexts following Leocal. And one of the questions they've looked at consistently is the question of mens rea. And that is something that obviously this court looked at in Roblero. That's something that the court was looking at in Briggs. I haven't read Briggs, but given what the court has said is the holding in Briggs, is the fact that they were looking at the mens rea of the Kentucky statute in terms of whether or not it would meet the proper definition. Now obviously, there's different contexts within which the crime of violence is defined. But this idea of mens rea runs continuously through. And what I think the court has reached a point now is that they're going to have to address the issue that was not directly in front of it in Roblero. In Roblero, you had a case where the underlying Nebraska statute had a mens rea that was less than recklessness. This court essentially looked at the other jurisdictions, don't want to mistake, the third, the fifth, the fourth, the ninth, and the tenth. And saw that those jurisdictions found that at least recklessness was required for this issue of generic federal manslaughter. The court noted that the tenth appeared to require a intentional requirement, while the other four jurisdictions required a reckless one. We have, in this case, a mens rea that is directly between those two. We have one that probably does not reach as high as intentional. I believe if you look, and we obviously cite to wanton definition in our brief and contrast it to recklessness, but we don't contrast it to the higher one of intentional. That's in the defendant's brief. And if you look at it, they have the three different layers of manslaughter in Kentucky. And the top one essentially seems to be intentional. The one that we're in seems to be wanton, is wanton, and the one below that is reckless. So we are directly in where the court is going to have to look at and decide where the Eighth Circuit stands in this. If the court stands that recklessness is what is required by federal manslaughter, then clearly we're above that. If the court looks and says that they're going to go all the way up to where the Tenth Circuit is and go up to intentional, then we're below that. I mean, I think that's clearly how this is framed. The government believes that what's proper in this case is to go with the recklessness standard. There's a number of reasons for that. One of them is the fact that a number of other circuits, what appears to be the majority, have gone that direction. Obviously, the Eighth Circuit can choose to go a different route if it finds that its analysis is different. We're not arguing that you have to follow what the circuits are doing. However, based upon where the Eighth Circuit was before, in terms of cases like with manslaughter, with burglary, these other things, we believe that the history of where this court has gone is more in line with recklessness in its prior decisions, prior to Leocal. We believe that the Leocal decision, which is a Supreme Court decision, only says that negligent cases are where the problem is. It doesn't address the recklessness. We believe that is where the line is drawn, especially when you look at definitions, statutes like manslaughter, where someone actually dies based upon this kind of conduct. And we're not talking about just recklessness, obviously, in this case. We're talking about something higher, wantonness. But there is an absolute requirement for some sort of violence to occur to a human being for them to die in these sort of situations. This isn't something where someone was in the hospital and they forgot to hook them up to the machine that's needed to keep them alive. A manslaughter statute requires someone to die and something has to happen to that person. Something has to happen to that person that actually takes their life, which is a very significant kind of thing. Given that fact, the government believes that where that mens rea should lie is at the level of recklessness. We certainly believe that the Kentucky statute is above that. We believe that there are cases out there that when looking at that mens rea in the context, obviously, of other crimes of violence, as you've said in the Briggs case, that that is the direction it's gone. We would ask you to follow the third, the fourth, and the ninth in that regard. I'd also like to address just briefly the issue that Judge Kelly brought up regarding the way this was framed below. The government did not find the Roblero case before making the arguments below, and I don't believe the defense did either. So in terms of framing this issue before the lower court, in terms of generic federal manslaughter, that wasn't specifically discussed. And it's unfortunate, because obviously it would be a clear record. But I believe there's two factors that allow this court to continue and look at this without having to send it back down for the court to reexamine that particular issue. One is the fact that what we're really looking at here is a question of mens reas. And the district court clearly had that issue. That was what we were really focusing on before the district court. The district court was drawn to that issue and ruled on that particular issue. The second one, obviously, is that this is a de novo review. No matter what the district court said in this case, the court is not required to give any deference to the legal rulings that the district court did. So I don't believe there's any real reason to send this back down to have the district court look at this particular issue because it wasn't framed correctly. At least that would be the government's take on that. Council, do you believe that for a manslaughter to qualify, it has to have an element of the use or attempted use of physical force? No, I don't believe that. And I don't believe that even the statute in this case. Well, no, I'm doing 2L1.2, the commentary defining crime of violence. It's a little bit ambiguous because it does list the crimes and say, and any other offense that has, implying that the previous list has an element. That's a normal English understanding of this kind of thing. That would be, obviously, I understand why the court reads it that way. I think it's important to look, though, at the fact that manslaughter was specifically placed in there. Now, this guideline statute obviously is meant to apply to the crime that we have in this case. I mean, there's no question that's what it's supposed to. And when you look at the term of aggravated felony as defined in section 40, subsection 43, which is what we're dealing with in this case. Manslaughter is specifically accepted from that, and it's specifically put in here. I don't believe that that particular language is meant to say that only manslaughter's that involve attempted use or threatened use of physical force against the person of another. Or is a requirement for each of these. I believe that's in effect, at least the way the government reads it, is that it is in effect a residual clause to this. We are saying that these things apply. We are also saying that other crimes that we haven't listed that involve these particular requirements also apply. Then, what the court is required to do is to look at, okay, is it one of the listed things? If it is, then we have to see, as in Roblero-Ramirez, whether or not it fits within the federal generic definition. If not, that's the end of that question. If it's not one of the things listed, then we fall into this sort of residual clause in the guidelines. And we look to see whether or not it has the use, attempted use, or threatened use of physical force. That at least is how the government reads that particular definition in the- You're reading out the word other then, right? Because otherwise it would say, in any offense. Tell me if the word other is not really there. But in any offense. Or any other offense. Yeah, but see, if you leave out the word other, it has your meaning. Right. In any offense, do you see my point? And other means referring to the other things in the family. I do take the court's meaning, but the government, at least in its interpretation of this, reads that as a residual clause. And I think that- Did this court, and your time shorts off, bring it to the point. Has this court in Roblero-Ramirez or in another case, has it rejected this idea that I'm proposing? I don't believe so, although I would say that based upon Roblero-Ramirez, it appears to be rejecting that. Right. I would say that Roblero-Ramirez essentially says, you look at manslaughter and you don't look to see whether this particular clause at the bottom is in that. You look to see whether manslaughter has the generic federal definition. That would be why the government reads it this way, and that's what I think the court was saying in Roblero-Ramirez. Although, obviously, I have two judges who were writing that, so I would defer to your intents on that, obviously. If there's any other questions, I'd be happy to answer them. I see my time is up. I would simply ask that the court affirm the sentence in this case. Okay, thank you very much. First, we'll give you one minute. I want to first address the issue of whether this was discussed before the district court. I think it was clear that what we were talking about was, is manslaughter manslaughter? And could I have perhaps more artfully have framed my argument? Yes, but that doesn't take away from the fact that the district court itself in making a ruling talked about using the categorical approach. Well, you only do that if you're trying to understand if something is generically qualifying as manslaughter to trigger the career offender guidelines. So I would take exception with the government's characterization that this wasn't discussed before the court. It was. Judge Benton, in response to your earlier question, it's footnote four. Okay, thank you. And one last thing I'd point out, and I will be doing a 28-J letter myself in this case, is if I could just finish this, your honor, I think it's important for the court. There's a case that this court decided back in 2003, it's United States versus Gonzalez-Lopez. It's found at 335, Fed Third, 793. I wish I had found this case earlier. I've done over 100 appeals before the 8th Circuit, and this is the second time I'll be doing a 28-J letter. But nonetheless, I think it explains what this court is wrestling with, and that is that this guideline area is unique, and that it contemplates two different definitions of crimes of violence. One triggers an eight-level increase. The more specific and narrow framing of the term crime of violence triggers a 16-level enhancement. I believe that if the court reviews that, and I'll explain it in my letter, but if you review that, I believe you'll find that the court inappropriately applied a 16-level increase when it should have been an eight-level increase. And I apologize for not finding that sooner, and I will put that in a letter and explain it to you. Technically, it's not a 28-J letter. It's supposed to be something new, not something you overlooked. Well, I will submit it to the court and you can- You can violate the rules and file it, but lawyers do it all the time. And we'll look at it. Thank you, Judge. Okay, thank you. Okay, we are completed.